J-A28038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.D.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 822 MDA 2021 |

Appeal from the Decree Entered June 8, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  No. 1697 of 2020

| | | |
|---|---|---|
| IN RE: S.E.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 823 MDA 2021 |

Appeal from the Decree Entered June 8, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  No. 1698 of 2020

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED:  DECEMBER 7, 2021**

Appellant, S.M. ("Mother"), appeals from the Decrees entered in the Lancaster County Court of Common Pleas, Orphans' Court Division, granting the petition of Appellee, the Lancaster County Children and Youth Social Service Agency ("the Agency"), for involuntary termination of Mother's

_____

[*] Former Justice specially assigned to the Superior Court.

parental rights to her minor children, A.D.S. and S.E.S. ("Children"). In addition, Mother's court-appointed counsel seeks to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). After a careful review, we grant counsel's petition and affirm the Decrees.

The orphans' court has set forth the relevant facts and procedural history, in part, as follows:

> A.D.S. is a minor female child born in April [of] 2017. S.E.S. is a minor female child born in March [of] 2018. Both minor Children were born to [Mother] and [Father]. In March [of] 2019, the Agency received a report with concerns for the Children as Father was observed holding the Children by their necks and subsequently overdosed on methamphetamines. Police responded to the report and Father was transported to the hospital where he subsequently died. When the Agency responded and met Mother, she tested positive for multiple illegal substances, was homeless, and did not have the proper means to care for the Children.

> The Agency has been involved with the family since April [of] 2017. Concerns have included substance abuse, inappropriate housing, domestic violence, and unsuitable parenting. On March 22, 2019, the Agency filed a petition for Temporary Custody and Dependency. The Agency's request was granted. On April 9, 2019, the Children were adjudicated dependent due to parental substance abuse, lack of appropriate housing, and neglecting the needs of the Children. On that same date, the court approved a child permanency plan for the Children.

> A permanency review hearing was held on August 23, 2019. Mother attended via telephone and represented by counsel. The court found that the placement of the Children continued to be necessary and appropriate. Mother was found to have been minimally compliant with the permanency plan in that she:

>> [B]egan dual diagnosis (mental health, D&A) treatment at White Deer Run on 6/21/2019, but she was unsuccessfully discharged from the program on 7/1/2019 for failure to follow the facility's rules—she began dual diagnosis (mental health, D&A) at the Blue

- 2 -

Prints inpatient program on 8/2/2019, and she remains there at this time; she had multiple positive drug screens during this review period; she needs verified income, appropriate housing, and parenting; she visits [with the Children].

Mother made minimal progress towards alleviating the circumstances which necessitated the original placement. Legal and physical custody of the Children remained with the Agency, and the Children were to remain in Foster Care, as it was the least restrictive placement that met the needs of the Children.

A second permanency review hearing was held on January 8, 2020. The court found that the placement of the Children continued to be necessary and appropriate. Mother was found to have been minimally compliant with the permanency plan in that she:

[B]egan dual diagnosis treatment (mental health, D&A) at Blue Prints on 8/2/2019, and she was successfully discharged from their partial hospitalization program on 9/2/2019, but she was unsuccessfully discharged from their recommended general outpatient treatment on 9/24/2019, and she has had multiple health issues since that time, and she resumed inpatient drug and alcohol treatment at Blue Prints on 12/9/2019, and she remains there at this time; she underwent a psychological evaluation in 7/2019, but she still needs to follow up on all recommendations, including mental health treatment; she needs verified income, appropriate and permanent housing, and parenting; she visits [with the Children].

The court found that Mother made minimal progress towards alleviating the circumstances which necessitated original placement. Legal and physical custody of the Children remained with the Agency, and the Children were to remain in Foster Care, as it was the least restrictive placement that met the needs of the Children.

A third permanency review hearing was held on June 3, 2020. The court found that the placement of the Children continued to be necessary and appropriate. Mother was found to have been minimally compliant with the permanency plan in that she:

- 3 -

[U]nderwent a psychological evaluation in 7/2019, but she still needs to follow up on all recommendations, including mental health treatment, and D&A treatment-she was enrolled in both prior to February [of] 2020 and did not have treatment from February [of] 2020 until she enrolled in trauma therapy [on] May 19, 2020, with Inner Visions; she completed a D&A evaluation and needs to enroll in the recommended IOP; she is receiving Sublocade injections; she completed a parenting capacity assessment on April 29, 2020, and [she] is awaiting the results; she needs parenting; she has income; she needs housing; she visits, which has been via video during the pandemic.

The court found that Mother made minimal progress towards alleviating the circumstances which necessitated original placement.

A fourth permanency review hearing was held on November 3, 2020. The court found that the placement of the Children continued to be necessary and appropriate. Mother was found to have been minimally compliant with the permanency plan in that "Mother has yet to meet her drug and alcohol, mental health, housing, income, or parenting goal." The court found that Mother made minimal progress towards alleviating the circumstances which necessitated original placement, and the permanent placement goal was changed from return to parent with a concurrent goal of adoption to [adoption] with a concurrent goal of placement with a permanent legal custodian. Legal and physical custody of the Children remained with the Agency, and the Children were to remain in Foster Care as it was the least restrictive placement that met the needs of the Children.

A fifth permanency review hearing was held on March 30, 2021. The court found that the placement of the Children continued to be necessary and appropriate. Mother was found to have been minimally compliant with the permanency plan and to have made minimal progress towards alleviating the circumstances which necessitated original placement. Legal and physical custody of the Children remained with the Agency, and the Children were to remain in Foster Care as it was the least restrictive placement that met the needs of the Children. At this permanency review hearing, Mother's visits were reduced to one-hour in-person every other week, and Mother had to produce a negative drug screen prior to the visit.

On September 16, 2020, the Agency filed its Petition to Terminate Parental Rights of Mother.  A Termination of Parental Rights ("TPR") Hearing was scheduled for March 30, 2021, with a second day of testimony scheduled for May 11, 2021.  During the evidentiary hearing conducted on March 30, 2021, relative to the Agency's termination petition, the court was presented with the testimony of the Agency caseworker, Mother, and Dr. Jonathan Gransee. [At] the May 11, 2021, hearing, the court heard testimony from Dr. Jonathan Gransee, Alexis Milner, the Agency caseworker, and Mother.  At the time of the May 11, 2021, hearing, it was specifically noted that the Children had been in placement since March 22, 2019.

At the May 11, 2021, hearing, Mother testified that she was currently homeless and subsisting on pandemic employment assistance.  Mother has been unable to remain clean of illegal drugs, and Mother admitted to using as recent as March [of] 2021.  Mother has been unable to complete any of the parenting objectives as she has never been able to make enough progress in her mental health and addiction treatment to receive a referral from those providers for parenting education.

Orphans' Court Opinion, filed 7/19/21, at 1-5 (citations to record omitted).

By Decrees entered on June 8, 2021, the orphans' court granted the Agency's petition and terminated Mother's parental rights as to A.D.S. and S.E.S. under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  Mother filed timely, separate notices of appeal, as well as a Pa.R.A.P. 1925(a)(2)(i) concise statement.  This Court *sua sponte* consolidated the appeals.

On August 25, 2021, Mother's counsel filed a petition with this Court requesting to withdraw from representation, and counsel submitted a brief pursuant to **Anders** and **Santiago**. We begin by reviewing counsel's request. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa.Super. 2005) ("When faced with a purported **Anders** brief, this Court may not review the merits of

the underlying issues without first passing on the request to withdraw.") (quotation omitted)).

This Court "extended the **Anders** principles to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa.Super. 2014). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, an **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, counsel filed a petition to withdraw certifying her review and determination that Mother's appeal is frivolous. Counsel also filed a brief which includes a summary of the history and facts of the case, the issue raised by Mother, the facts that arguably support the appeal, and counsel's assessment of why the appeal is frivolous, with citations to relevant legal authority. Finally, counsel attached to her petition a letter she sent to Mother pursuant to *Millisock*, *supra*.[1] Therefore, counsel complied with the technical requirements of *Anders* and *Santiago*.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*).

Counsel's *Anders* brief raises the following issue (verbatim):

> I. Whether the Court erred in terminating Mother's parental rights to the child because the Lancaster County Children and Youth Agency failed to prove by clear and convincing evidence that Mother's parental rights should be terminated under 23 Pa.C.S.A. Section 2511?

*Anders* Brief at 8.

Initially, we recognize:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are

---

[1] Mother did not file a response.

supported by the record. If the factual findings are supported, appellate courts review to determine if the [orphans'] court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The [orphans'] court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Accordingly, we address termination under Section 2511(a)(1) and (b), which provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

…

**(b) Other considerations.–**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1), (b) (bold in original).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (citation omitted).

We have explained that a parent does not perform her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (quotation omitted)). "Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the

parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d at 730 (quotation omitted).

With respect to Section 2511(b), this Court has stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005) (citation omitted). The orphans' court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

Instantly, with respect of Section 2511(a)(1), the orphans' court relevantly concluded:

> [Although] the court does not doubt Mother's love for her children, she has been unable to conquer her addictions that prevent her from caring for her children. The court is troubled by Mother's inability to perform parental duties for the Children for over two years. Mother conceded at the May 11, 2021, hearing

- 10 -

> that she is still not at a place where she can care for the Children and that they are better served in the care of the resource parents. Given the history of this case, the court finds that the Agency has met its burden under this [subsection] as it is clear that that [*sic*] Mother will not obtain the ability to care for the Children in the near future.

Orphans' Court Opinion, filed 7/19/21, at 8-9.

The orphans' court's findings are supported by the record. The Children's resource mother testified that the Children have been residing with her for two years and two months. N.T., 5/11/21, at 16. The resource mother testified the last time Mother visited the Children in person was for two hours during Christmas. *Id.* at 18, 22. The resource mother testified Mother had video chats with the Children since that time, and during one such visit, it appeared Mother fell asleep during the video chat. *Id.*

Moreover, Ludie Juste, a caseworker for the Agency, testified the primary reason for the Children's placement was because of Mother's drug use, mental health issues, and lack of parenting, which occurred because of her issues. *Id.* at 25. Ms. Juste testified that, on December 31, 2020, Mother reported that she had tested positive for illegal drugs. *Id.* at 26.

Further, Ms. Juste testified Mother had a visit scheduled with the Children for March 31, 2021; however, pursuant to court order, Mother needed to be tested for illegal substances and produce a negative test result prior to visiting the Children. *Id.* On March 31, 2021, the day of the visit, Mother sent Ms. Juste an email indicting that she needed to cancel the visit with the Children because "she did not have time to clean out her system." *Id.* On

May 6, 2021, Mother sent Ms. Juste an email indicating she was willing to get a Sublocade injection. *Id.*

Additionally, Ms. Juste testified the Agency has not referred Mother for a parenting class because Mother has not received a positive recommendation from her mental health or drug treatment providers. *Id.* at 26-27. On May 6, 2021, Mother sent Ms. Juste an email indicating that she did not have housing, and she continued to reside with friends. *Id.* at 27. Ms. Juste testified Mother is unemployed, and the Children have been out of her care for 26 months. *Id.*

Mother testified she is homeless, and she doesn't "really stay in one spot for long." *Id.* at 33. She is living with friends, and she is unemployed but receiving pandemic assistance. *Id.* at 34. She is planning to apply for Social Security Disability benefits, but she has "all these things to do." *Id.* at 41.

Mother testified she has not entered any type of drug or alcohol treatment program since November of 2020, but she received a Sublocade injection to help with the cravings. *Id.* at 36. Mother admitted she is addicted to "meth and heroin," and it is a longstanding problem. *Id.* She indicated she would like long term drug treatment, but she hasn't "had time to look" for such a treatment program. *Id.* at 37. Mother indicated she takes medicine for mental health issues, but she is not receiving any type of mental health treatment. *Id.* While she was in Blue Prints, she was recommended to take a

parenting class, but she did not do so because she needed a positive report from a psychiatrist saying she was mentally stable. *Id.* at 39.

Mother admitted the last time she saw the Children in person was during Christmas of 2020. *Id.* at 42. She admitted she had no further in person visits due, in part, to her drug use. *Id.* Mother testified she loves her children, but she admitted they should remain in the care of the resource family. *Id.* at 46. However, she testified that, in her opinion, she should not lose the right to be their mother. *Id.*

Consistent with the above evidence, we discern no abuse of discretion by the orphans' court in concluding Mother "by conduct continuing for a period of at least six months immediately preceding the filing of the petition…refused or failed to perform parental duties" as set forth in Section 2511(a)(1). In addition, our independent review of the certified record reveals no non-frivolous issues that would support Mother's appeal from the termination Decrees in this regard.

We next review the orphans' court's finding that termination of Mother's parental rights serves the Children's developmental, emotional, and physical needs and welfare pursuant to Section 2511(b). We have explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> [I]n addition to a bond examination, the [orphans'] court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally,

- 13 -

the [orphans'] court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quotation omitted). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail…the result, all too often, is catastrophically maladjusted children." *Id*.

Here, in concluding termination of Mother's parental rights was in the best interest of the Children under Section 2511(b), the orphans' court relevantly indicated the following:

> Mother's longstanding undertreated addiction and mental health issues continue to deprive the Children of essential parental care. During the evidentiary hearing relative to the Agency's petition, the court heard testimony from Dr. Jonathan Gransee, who completed a psychological evaluation of Mother. Dr. Gransee testified that Mother's unaddressed mental health issues and uncontrolled drug addiction will continue to cause harm to the Children…Mother testified that she is not currently in the position to care for the Children and that it would be best if they remained with the resource family until she is in a position to care for the Children. Despite these perpetual issues and a lack of a reasonable expectation of when she will be able to parent the Children, Mother believes that her parental rights should not be terminated.
>
> The best interest of the child, and not the interests of the parent, must guide the [orphans'] court. As repeatedly noted by

- 14 -

the [appellate] court[s], a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

Orphans' Court Opinion, filed 7/19/21, at 13-14 (citations omitted).

The orphans' court's findings are supported by the record. Further, the resource mother testified the Children are doing well in her care, and they both attend Sunday School. N.T., 5/11/21, at 3. The resource mother testified that she ensures the Children visit with their maternal grandparents and uncle, as well as their half-brother. *Id.* at 4. She also ensures they visit with their paternal grandparents, aunt, and cousins. *Id.* The resource mother testified the Children neither ask to talk to Mother nor inquire about her despite the fact the resource mother keeps photographs of Mother in the house. *Id.* at 6. Resource mother testified that, in addition to herself, the Children live with her husband and her children. *Id.* at 7. She and her husband intend to be a permanent resource for the Children. *Id.*

Ms. Juste testified she visits the Children once a month at the resource home, and the Children are "doing extremely well in the resource home." *Id.* at 27. She testified it is the Agency's opinion that it will be in the best interest of the Children for Mother's parental rights to be terminated and the Children be adopted. *Id.* at 28.

Based on the aforementioned, we discern no abuse of discretion by the orphans' court in finding termination was warranted under Section 2511(b). Moreover, our independent review of the certified record reveals no non-

frivolous issues. Accordingly, we grant counsel's petition to withdraw from representation, and affirm the Decrees terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a) and (b).

Counsel's Petition to Withdraw Granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2021